Next matter number 24-2055 Peter Davenport versus the Town of Reading. At this time would counsel for the appellant, Town of Reading, please come to the podium and introduce himself on the record to begin. Good afternoon. May it please the court. Ethan Dively for the appellant, Town of Reading, Massachusetts. If I may, I'd like to reserve two minutes for rebuttal. You may. May it please the court. This is a statute of limitations case that follows closely on the heels of the Supreme Court's 2023 decision in Tyler versus Hennepin County, Minnesota, which found that when property is taken by government entity for non-payment of real estate taxes, the taxpayer has a Fifth Amendment interest in any resulting surplus equity in the property which exceeds the amount of the tax debt. This court is asked to decide the moment under Massachusetts state law when a Fifth Amendment taking occurs during the Mass General Laws Chapter 60 tax title foreclosure process. Now the town's position is that that moment is at the moment that the state land court enters a judgment of foreclosure. In this case, that would have been in 2014. Mr. Davenport's position and the position held by the district court is that it occurred on the moment of sale of the property when the town came into possession of the proceeds. Here, that would have been not until nine years later in January of 2023. Now the town asks that this court find that the moment of taking occurred upon entry of judgment in 2014 and set aside the district court judgment in order that the Mr. Davenport's claim be dismissed. We have an alternative argument, which I don't intend to address substantively that, you know, in the event that this claim is not barred by the applicable three-year statute of limitations, there are equitable adjustments that need to be made to account for Mr. Davenport's use and occupancy of the property for a period of about eight years following the entry of judgment. Now, as the question is, when does Mr. Davenport's Fifth Amendment claim accrue? The town correctly followed a complete statutory process under state law, which begins with the taking of his property nominally by the recordation of an instrument of taking and is completed by the entry of a judgment in the Massachusetts Land Court several years later. Now, the Tyler case tells us that the state law process here is unconstitutional because it does not, in fact, provide for a mechanism to return any equity which exceeds the debt owed to the town. Now, there's no allegations here that the town didn't completely follow the applicable state process. It's simply that the state law, you know, failed to account for this and has subsequently been amended post-Tyler. Now, it's clear under the Fifth Amendment and Supreme Court's 2019 decision in Nick v. Township of Scott, Pennsylvania, that the Fifth Amendment is self-executing. And so there's some argument in this case that the town choosing after the fact to sell the property or keep the property would have informed the moment at which Mr. Davenport's Fifth Amendment claim arises. But I don't see it that way, and I don't believe the court should either. When I ask you sort of a policy question, but I just I'm not sure I understand. I think I understand your argument, but you sort of say in your briefs that, you know, the foreclosure date should be the important date because administratively, that's just a much more straightforward thing to do, particularly from the town's perspective. But, like, it seems to me having a rule that anyone knows is really the point of this. And that I guess I'm wondering if I'm missing something about the ease of administering a rule that says, well, the date that matters is when the house was sold or when the town takes it for its own use. And I do think there's this sub issue of like, well, what if the town never sells it? Right. Then the foreclosure date might might be administratively the better one. But could you just address address that? And that's that's sort of the crux of the problem from the town's perspective is that at the completion of entry of judgment in the foreclosure process, the town pursuant to Mass General Laws, Chapter 60, Section 77, holds the property as general municipal property free and clear of any other obligations. So it's it's at that moment that the town can choose to keep the property. It can choose to sell the property. But there's there's no certainty. There's there's no violation of the Fifth Amendment until the equitable title has passed at a moment at which the fair market value of the property exceeds the property taxes out. That's certainly correct. And so the the moment of foreclosure in and of itself honestly doesn't tell you tell us we've done that you've done anything unconstitutional. If the unusual case were such that the property that you foreclosed on was on top of an oil spill or something and so effectively was worth nothing and taxes owed were $20,000, there would have been no taking without just compensation because the equitable title would be worth less than the property taxes owed. Certainly that's absolutely correct. But at any moment within the three year period that the fair market value exceeds or you in fact sold it and got proceeds higher than the property taxes, it's at that moment and not a moment before that there's a violation of the Fifth Amendment, right? I don't entirely agree, Ron. I believe that Fifth Amendment damages for the purpose of this claim can and should be measured from the moment that the taking occurs. That is the moment of wrongful appropriation, which why it's only a taking without just compensation. I thought that violated the Fifth Amendment. There is no procedure under Massachusetts state law in effect at the time of this case, to be clear. It has subsequently been amended, which provides for or even allows a municipality. But if you take something that is worth less than the property taxes owed, you have not violated the Fifth Amendment, have you? No, because there's no taking here. But there's a taking of the property. But there is – your Honor is correct. There's no need for compensation if the value – Because you can take something that's just worth less than – so no big deal. So why isn't the right test for the Fifth Amendment violation that it's when there is a failure to pay just compensation for the taking that only can occur at the moment at which equitable title passes in which the fair market value exceeds the property taxes owed? Or regardless of fair market value, you've sold it and gotten proceeds that exceed it, and at that moment, it accrues. But if the three years have passed and they haven't sued even though fair market value was in excess of it, then it's just yours. Why wouldn't that make sense as the rule? Again, I think it's important that we look to the effect of a foreclosure under Mass General Laws Chapter 60 because the equitable title that you speak of, your Honor, passes to the town before that judgment enters. It is a judgment of foreclosure, which has the effect of extinguishing entirely any remaining rights that a taxpayer has in their property. So until we know fair market value or there's been a sale with proceeds greater than the property taxes owed has occurred, there's nothing under Tyler that suggests there's been a taking without just compensation. My understanding, Your Honor, of the Supreme Court's jurisprudence under the Fifth Amendment specifically as discussed in the Nick case is that the Fifth Amendment is self-executing. Right, but self-executing is a requirement that just compensation be paid for a taking. If what's taken isn't in excess of the property taxes, what do you need to pay anybody? Well, in that case, you don't need to pay anybody. Right, so there's no Fifth Amendment. There's nothing to self-execute. Certainly. So the claim can't accrue at that moment. But that's in a circumstance, Your Honor, where there is no claim going to accrue. Correct. So it only accrues once. There's some reason to think not just that equitable title passed, but that it passed when fair market value exceeded the property taxes owed. And even if it's not a fair market value test, it would also be the case that if the fair market value of it was less than the taxes, but at the moment equitable title passed, you then sold it for a killing way above fair market value. Under Tyler, you'd have to pay those proceeds too. But if that's the right way to understand it, then it would seem to me that since it's perfectly available, unless they can show otherwise, to know whether equitable title passed. And during that three-year period, the fair market value of the asset was higher than the taxes. They should have sued during that period of time. After they haven't done so, time's up. Now it's yours. You can do whatever you want with it. If you sell it 20 years later, they don't have a claim at that point because they had their opportunity to bring their claim. Certainly, Your Honor. And that's precisely the town's argument. That's not your argument, though. Your argument is that it accrues at the time equitable title passes, independent of what we know about the value of the asset when it passes. And I don't really understand why that would be the case. The town's position, Your Honor, is that the value of the asset is ascertainable at the moment judgment enters. Correct. Unless it's higher than the property taxes, the claim can't accrue. It can't accrue at the time equitable title passes. It accrues most of the time, almost all of the time. Those two things will be coincident with one another. Certainly. But the relevant thing is that they are coincident with one another, I would think, for the claim to accrue. Yes, that is certainly true. And it's the town's position that if you are an individual taxpayer who is subject to foreclosure, you had an opportunity at the moment that judgment enters to evaluate whether or not your property had a value which exceeded the debt that was demanded by the town because demands are issued and you know what those demands are. If you sold within that three-year period, whatever the value of the sale was, you agree you owe those proceeds under Tiler to the person if they sued you during that three-year period. Yes, I think that's correct. But if you sell the day after that three-year period, it's a different story. It's a different story specifically due to the operation of the statute of limitations, Your Honor. I think, you know, to the extent that an appraisal is necessary to evaluate the amount of… And you have odd cases, I guess, where there was concealment of the fact that under the land was a gold mine or something and they didn't know about it. Maybe that's a different case. I'm not aware of any, Your Honor. That would indeed be a different case. I'd like to highlight a distinction that I think this Court may already appreciate, but it's referenced in Mr. Davenport's briefs. They describe the town as obtaining a foreclosure judgment but not completing a foreclosure. And now I think this is a conflation of residential mortgage foreclosure law in Massachusetts wherein you complete a residential mortgage foreclosure by actually holding the auction. And upon completion of that sale, the foreclosure is complete and title passes. That's simply not the case under Generalist Chapter 60. But I think Your Honors appreciate that the tax foreclosure process is complete, at least with respect to the town's obligations, as soon as judgment enters. And I think that is really the critical component of this from the town's perspective is that the town could have done absolutely anything with the property after judgment entered and had no further obligations to do anything. If, as is in the case with other jurisdictions, there may be a statutory process that requires notice, requires sale. Indeed, the amendments to Chapter 60 now require a town in possession of a judgment to make a decision whether it's going to keep or sell the property. Let me just go back. Let's say you take the property and it was worth less than the property taxes in a weird case. And you hold it for three years and then sell it for more. I take it your position is the claim doesn't accrue at that moment. The town's position is that the claim accrual occurs upon entry of judgment, and that is a risk or a benefit for the town. I guess the idea is it's kind of like both things have to be true. Once three years have passed from equitable title passing, you're saying they can't possibly bring the claim. But it may be the case that within that three-year period, they can't bring the claim until they can show that the fair market value exceeded the value of the taxes. It would be the town's position, Your Honor, that the knowledge of the extent of your injury is not information that's necessary to have a claim that could be brought. I'm trying to deal with the strange circumstances, which may be a nonsensical circumstance, but for analytic purposes, it helps me. If when equitable title passes, the house is worth less than the taxes owed, they can't sue at that point under the Fifth Amendment. That's correct because they would have no claim. OK, so now a year later, you're still holding it. And let's say the value of the property, because all of a sudden everybody wants to live in the town of Davenport, goes way up. I would think the clock would then start, right? The town's position, Your Honor, frankly, is that this can only be measured at the moment that the property is taken and that there's an obligation. Even though they can't sue at that moment in some circumstances. I respectfully disagree with Your Honor. If it's worth less than the property tax, they couldn't bring a claim at all at that moment. That's correct, Your Honor. And that's an odd accrual rule. It accrues at a time in which you have no claim. The town's perspective on this, Your Honor, is that there is a risk to the municipality foreclosing in holding tax title foreclosure property. Because if it increases in value after the date of the entry of judgment, there may be a boon to the town. If the property is discovered to be on top of an environmental hazard site, the town then has a property which is worth significantly less. And the moment of discovery there certainly matters after the fact for the town's finances. But the position is that that is a risk that is borne by the town and that, you know, as a general matter. It seems unfair to the homeowner that the clock could start on a date in which they couldn't bring the claim. I believe, Your Honor, that this is a very unusual circumstance. I appreciate the relevance of the hypothetical. In most cases, it won't matter. But just in terms of what the rules should be, it would seem to me that the clocks. But then if it starts when you know that the value exceeds it, that can't quite be the rule because that could be 100 years out, which I understand why that would be nonsensical in its own right. Right. And I'm just trying to figure out what's between those two. that that makes the district court's position untenable is because we we have every right to take and hold property for any duration of time. And we cannot operate in a world where property sold 10 years in the future, 20 years or 50 years in the future may be subject to a Fifth Amendment claim that. But at least then the accrual would be right. Right. You know, at the day it was sold, you certainly would. But I think the message the message to the town here cannot be that we could have avoided liability and frankly not not been in this room this afternoon if we had only decided not to sell the property. So we had evicted Mr. Davenport, but not taken the extra step of auctioning, auctioning the property. I think if we're if we're measuring the possibility of a claim based on the date of sale, almost all those cases, that's not really going to be much of a problem. Because, in fact, fair market value exceeded it that whole time. So they had a live claim that they didn't bring within the statute of limitations. That part seems to me to make sense, which is whenever fair market value exceeds it at the time of the taking. You have three years to bring a claim. You can't wait and then say no. I'm waiting to see if you sell it later for more because property values generally go up that that that I get. But the just the difficulty I have is the start date because it does seem strange to start the date at a time where theoretically there'd be no claim at all. And I certainly appreciate your honor's hypothetical. I think it highlights the problem with relying on any date other than the entry of judgment because the the flux in property valuation could delay claim accrual indefinitely. And I don't think you tell us solves that dilemma. The current legislative scheme, the statutory scheme. Yes. The current legislation. So this really is not a problem going forward. This this is not a problem with respect to judgments that will enter. What it might create is a problem for I'm just going to put a positive spin on it for what the town did here allowed the person to stay in the home. That kind of gets taken off the table under the new scheme. I take it. Yes. Exactly that. I think, you know, I can't speak for the town as to the policy decision of delaying eviction and sale. But certainly the new statutory process compels the town within a matter of weeks or months to determine whether it will keep the property or sell the property. And then there's a process to determine in short order what the value of that property is in real time so that we avoid this question of what is it worth at the moment of judgment? What is it worth three years later under that scheme? When would you think the claim accrues? I believe that the claim accrues at the entry of judgment and the requirement in short order following judgment to determine why would that necessarily. B, I mean, because it why wouldn't it be at the time of that determination about the value because the government's act of taking absolute entire title to the property is the invasion of don't have a Fifth Amendment claim to challenge that at that moment. There's nothing wrong under the Fifth Amendment with taking absolute title when taxi property taxes are in arrears. Tyler doesn't say that. It just says there's a problem with keeping the excess value above the property taxes. So the mere taking of it just isn't a Fifth Amendment violation. Certainly. And where there is now a state process which compels action. Under that process, when would the cruel rule start? I believe it would be the moment at which the town has to make a decision. And that's later informed by the appraisal that's required to occur or the property is marketed and sold pursuant to. And is that how it works under this? Does the statute set a statute of limitations? It does. And when does it say that the accrual starts at the moment when the taking occurred or at the moment when the decision is made? It runs from the I believe it runs from the entry of judgment and specifically on that issue. This is not found. It's referenced in our briefs. It's not found in Chapter 60. It wasn't codified. The legislation which implemented this amendments to Chapter 60 also included a two year look back period from the date of the Tyler decision. So if you were subject to a foreclosure between May 25, 2021 and May 25, 2023, when Tyler issued. And that is when if your judgment entered in that two year window, the statute provides that you have a claim to bring under the newly amended version of Chapter 60. And so the state legislature is told us that they believe your claim accrues, at least under the statute, as it's amended from the date that judgment is entered. And when is the appraisal going to be effective, regardless of when it's done? Is it a look back appraisal or is it current value appraisal under the new statute? If in the event that the town under the amended version of general laws, Chapter 60 keeps the property, I believe you are under a very short timeline. It may be less than six months to have an appraisal done. And the calculation is completed based on on that number. If you choose to sell the property to Judge Howard's point, is that a look back appraisal from the time of the equitable title passing or the judgment? Or is it from the date of appraisal? I do not believe the statute specifies that it is a look back appraisal. And I think the rationale for that, again, is the very short timeline that elapses between the entry of judgment and the obligation to, in fact, obtain that appraisal. With respect to sale statute, in theory, if it if the something happened in Davenport that made property worth a lot less at the time of the appraisal than it was at the time of the judgment. I guess, in theory. A plaintiff could assert under Tyler, a Fifth Amendment right for the value that was taken from them at the moment of the judgment. I believe that would be a reasonable construction of a Fifth Amendment jurisprudence and federal courts. Are you giving us a lot to think about? I think a few minutes. I reserved a few minutes for rebuttal. Thank you. At this time, would counsel for the appellee please introduce herself on the record to begin? Good afternoon. Your honors may please the court. Yana Conley and I represent the appellee to Peter Davenport. We respectfully ask that this court affirm the decision of the district court. I believe your honors really touched upon this previously, but I just do want to clarify that the Tyler decision essentially said that a homeowner has two equities properties in a in a home, meaning the title of the property. So the physical property and then they have another right, another property under the Fifth Amendment, which is that equity in the home. So and Tyler really stressed because in a case in which you haven't paid your property taxes and they take the property. If the value of the property they took was less than what you had not paid, would you be entitled to any just compensation? No, your honor, because so. So in that sense, although you're saying there's two rights, it's kind of. Artificial to say there's two rights, but you always have a right to only is just compensation for the taking of the equitable title and you don't get that to the extent that the asset is worth more. Whether they're holding it during that time because you could be holding it and selling it or whether they did sell it and got proceeds, then you get those proceeds. You're correct, your honor. Tyler. Tyler does talk about the fact that when there is surplus equity. So that would mean that the value of the home exceeds the unpaid taxes, the penalties and the interest can occur well before sale. Correct. So why doesn't it make sense to say since it can occur well before sale, that the clock starts running when it occurs? Well, I believe that the clock starts running under a takings clause under a takings clause argument when the government has made a final decision with respect to. The action that they will take upon the taking, and as of that day, once they've made that decision, if the property is worth more in the tip, if the property is worth more at that point, then the homeowner would have a claim for a take. Why is that? In the typical case, the government just takes your property. So obviously at that moment, they owe you just compensation because it always has some value. I mean you have a strange case in which what they took from you was a nuisance and then it would be hard to see how there's any compensation owed to you. They just relieved you of a burden, but in the typical case, they're taking something. This is an atypical case because they're taking it in return for you not having paid taxes. So effectively, you owed them something. Now they're taking something. Until we know there's a delta between those two things advantageous to the government, they have not violated the Fifth Amendment. I completely agree. That's why… But the moment we know that, they have violated it. So why wouldn't the clock start at the moment we know that, independent of what they're going to do with the property? Because the burden shouldn't be on the homeowner to make that determination. Why can't you figure out fair market value of your own asset? Well, I believe that you have to also look at it as a policy and a justice argument here. And we're talking about individuals who, for whatever reason, has not paid their property taxes, are far behind. These individuals, if they can't pay their property tax, I believe a reasonable inference would be that they cannot seek legal advice to determine. At a minimum, the property tax bill they're not paying tells the assessed value of the property. And that number itself could be greater than the taxes owed. So they'd know at that moment, they'd have a pretty good argument for saying, you just took something that's worth more than what I didn't pay you because it says on your bill, here's what it's worth. But I believe that we still run into a potentially ripe issue here about bringing a case at that moment. And the reason why I'm claiming that is because let's say that let's just hypothetically, January, they foreclosed on the property in December. In January, the house is now worth more. I bring a claim and the town's like, well, we weren't going to sell it. Let's get an appraisal. But then during litigation, they end up selling it for more. What I'm trying to say is that if we put the burden on just that, I would suggest that if they sell it for more during the limitations period, while the claim is still alive, you get all that excess. The question is whether you just sit and wait for 40 years. And I'm not saying this is a negative thing, but just in the extreme hypothetical, obviously, it's going to go way up in value over the course of those 40 years. And the question is, why does that make sense to treat it at that point as now accruing all that other time it accrued? Well, I think we just I think it really goes back to looking at a just and equitable point of view and looking at the parties and the positions that they have, where you have the town, which they have a lot more resources they can inquire about. You know, they know the laws. They have lawyers on hand. And then you have lay people who were adding an extra burden on them that is very difficult to be able to parse out. And I just ask you something about that. I'm not sure if you're talking about the inability to bring the legal action to compensation claim, or if you're talking about the inability to understand that they might have a claim, that is that their property might be worth something or their equity in the property might be worth something. So can you tell me why the better rule would be to wait until the time that the property becomes monetized? Why is that the better rule? Well, I believe that that should be the rule. However, I did in my brief mention and I did mention this in the lower court brief as well, which is the fact that if in this case, it's very unique because the town of Reading did nothing after they obtained title to the property. They didn't evict Mr. Davenport until October of 2022. So even if we put the date of eviction or we at that point, we put it. Well, at that point, he should have known that they took his property and he may have had a claim. Look at the value of the property that still would have been within the statute of limitation. The unique aspect of this court is that the town absolutely did nothing for eight years. Couldn't sell it during that time. Excuse me. He couldn't sell it and make a profit during that time. Correct. He could not. Right. So what he knows, is that hard to know? I believe so. And if you look at the new amended Chapter 60 of Massachusetts legislature this summer, in accordance with Tyler amended Chapter 60. When you look at the amendments that they did to the statute, they put all the burden on the town. The town now has the burden to notify a homeowner, I believe, between 45 days after the enter of judgment on a foreclosure of property. They have to notify the homeowner their intention with the property. The homeowner knows at the time of foreclosure that it can no longer sell the property. Correct. So just to Judge Howard's point, what is so, is that too much of a burden to put on a homeowner? That they understand that at the moment equitable title passes, even if they're allowed to reside in the property post foreclosure, that they've lost something valuable, namely the ability to sell the asset for its value? Yes, I believe that that's a lot to put on the homeowner, the burden. And if you look at the amendments to the statute, the burden wasn't on the homeowner to get an appraisal. The burden is all on the towns to figure out the worth of the property and notify the homeowners. So the homeowners, when the legislature took into consideration of how we're going to handle Tyler, they really tried to ease it on the homeowners. I understand the reasons. That may be a good choice and a fair choice, but as a constitutional matter, that it be required is less evident to me. Well, I believe that it really goes into, if we look at this specific case and we look at the facts of this case, I think really the key point is that. Can I just ask you a question?  Is it clear from the record here that the fair market value of the house was always, that there's always going to be a surplus? No, there's no, there's nothing in the record to talk about the value of the house within the eight year period. And that's why I would ask your honor that if there is a found finding that the statute would have accrued earlier, that we do remand it back so that we can determine an actual date. Because there's nothing in the record to say that it wasn't the date of the sale or around that time. But I really think that in this particular case, and I think it is unique because of the inaction by the town. We really need to look at the fact that the homeowner was never notified about what the decision by the town was. And to say that it's only if the fair market value is higher than the tax taking, the tax is also accruing interest. It's also accruing penalties. So it's not just the unpaid taxes. So a homeowner never really will know that final number until he brings suit. And so I think that by putting that burden on it, it would also create more chaos for the courts because there would be a lot of cases that would come forward that would have to go through discovery in order to determine exactly what the fair market value was. And when did that happen? Is it true, though, that there's going to be many cases in which the house will have a lower fair market value than the taxes out on it? No, I believe that most likely a lot of times the house, barring an unusual situation, as you stated earlier, most of the time. But the only thing I can think maybe in the commercial property setting, I could imagine it could occur more frequently potentially. But it seems like a very unusual circumstance. So all we're really trying to do is just to make logical sense of the taking clause and setting the accrual rule. But practically speaking, if we set it at the date in which fair market value exceeds the assets or there's some other indication of the value exceeding the property taxes, either one, whichever comes first, I guess I don't see practically what would be so problematic about that except for the point you're making, which is the homeowner may not be in a position to know. But that seems to me… Well, we're addressing the fact that our argument is not that the date needs to be the date of the sale. The other argument is that the date needs to be when the town notifies the homeowner or the homeowner has some sort of constructive notice to know that the property is going to be kept by the town. So in this case… Why does the homeowner, for Fifth Amendment purposes, have an interest in knowing between those two things? Because there's no finality. So in a takings clause, if we look at the case Packdale v. City and County of San Francisco, which is a 2001 Supreme Court decision, the facts are very different in that. But that does hold for the proposition of law that you cannot consider, a court can't consider a claim, a taking claim, before the government has reached a final decision with respect to the action claimed to be the taking. So in these situations, there's no indication at all from the Town of Reading on what their final decision is going to be. Meaning, if they had told Mr. Davenport within that eight-year period, we're evicting you, I think you could say, maybe the eviction date, because now you've left. Is the idea that the homeowner could miss out on the town selling for higher than the fair market value? Once the homeowner knows that they've taken their house, and the house is worth more than the property taxes, what is it that the homeowner needs to know more under the Fifth Amendment? Well, you're imputing a judgment that the homeowner is diligent enough and savvy enough to be able to keep this. They know that. They now know the fair market value is higher. Are you saying that they still should be able to not have the claim accrue at that point, even though they know that, until they know whether the town is going to sell it? Yes. And why? Because I think that it goes back to, we need to have a final decision. The final decision was to take your house. But that's... You can't do anything that you want with it anymore. But that's in respect to the title of the property, and I think that's when you parse out, as I stated... That makes it sound like the homeowner has an interest in waiting to see if they're going to sell for more. Well, I believe that Tyler really parses it out, and really, that's the way that Tyler ran it, if you look at it. I mean, the statute of limitations wasn't really at issue, so we don't know what the Supreme Court would have done. But they looked at the date of the sale, and after the date of the sale, the homeowner brought the property. And I understand that's not... The statute of limitations, right? Correct. And then at that point, they said that the way that... They wanted to just know if they were going to sell it for more. You could presumably wait to the last day of the statute of limitations to file your claim. Then you'd know they didn't do it until 4-59 on the last day. Right. But I think that that just imputes all of the burden on the homeowner. And I think if you look at the jurisprudence of the Fifth Amendment, and especially in Massachusetts, where we are at, the courts and the legislature believes that... I think that the jurisprudence shows that a lot of the burden is more on the towns and the municipalities than it is on the homeowner. And to do your hypothetical as to just the market value, it really just puts all the burden on individuals that I don't believe might have that savvy. And I think you're encouraging them. And maybe it's not so applicable because the statute has come in, but there would be an encouragement, theoretically, in other circuits, and maybe in other states in this circuit that would be looking at the decision as well. For towns to hold and do nothing and hope that the homeowner just doesn't know. I want to make sure I have something clear from the record. So the foreclosure was in 2014, the tax foreclosure? Yes. And on the town's view, the statute of limitations would have run sometime in 2017? Correct. Tyler was in 2023? Correct. The new legislation goes back to foreclosures that took place in 2021? Correct. So there's a four-year difference in no man's land, right, from 17 to 20? So that leads to this question. Have the parties been given the opportunity to participate in our camp mediation program? We have, Your Honor. If the parties are interested in taking another shot at that, it's subject to the presiding judge's determination. He's for it. We would be inclined to permit it, I think. Yeah. Yeah, I mean, if I could just have another moment to just really harpen the facts that I think are important here, which is the fact that the land court issued the judgment of foreclosure in 2014, but then the town of Reading took no action whatsoever until they evicted Mr. Davenport in October of 2022. So even if we don't want to put the sale, the date of the sale, as the statute of limitations, and we want to say, well, it's when he knew or should have known, which is the standard under 1983, I think it's fair to say that he may have not known or should have known about a taking until at least he got evicted. Can I ask, just of some interest, what was the sale price? It sold for $400,000. And do we know what the fair market value of it was at any time prior to that? There's just nothing in the record? I don't believe so. But what was the last assessed value of the property? I honest, I don't have that. That's not in the record. I don't believe so. I believe that we really focused on the town had to assess the property. Otherwise, they couldn't very well be charging you the property taxes. I'm not sure if the town made any assessment after 2017 because I believe that at the time of the judgment, though, there must have been an assessed value of it. I can't answer that. I apologize, Your Honor. So, in terms of when the town, sorry, the date of foreclosure, there isn't a record of what the house was valued at or what the tax? I'm not sure. I don't believe so. At least when the house was between 2017 to 2023, when they sold, there's nothing in the record at that time. Maybe when they got the judgment. But between the judgment and the date of sale, there's nothing in the record about what the fair market value was. Did you find an assessed value in the record? I'd just be curious what if you don't. You know what? You just do as a 28-J letter that just identifies that piece of the record. And then if you want to respond to that, you can. Your Honor, there's no further questions. I will just rest on my brief. Thank you so much. Thank you. Thank you at this time. Counsel for the appellant reintroduced himself on the record. He has a two-minute rebuttal. Again, Ethan Dively for the appellant, Town of Reading. I'll try to keep this as brief as possible. In direct response to Your Honor's question, Record Appendix page 117 is the assessor's card for this property. And it does indicate that as of 2015, because this card was recently produced and runs from the date of the town's ownership, the assessed value in that year, 2015, was $344,000. So the delta between you is $56,000? The – one of the difficulties – The value of the property is $356,000. The sale price is $400,000. The last assessed value in 2015 was $344,000. And the sale price was $400,000? That's correct. So that's what I'm saying, that – Again, the – so in response to some of my sister's commentary about more or less the town – It doesn't statute limitations that delta is $400,000. So the town really did not meet. But in fact, the delta is – had this been brought, it is a $56,000 difference, yeah. And so the town did not maintain the status quo. From – judgment entered in 2014. Mr. Davenport had been, although not paying them, receiving real estate tax bills quarterly up until that date. The town stopped sending real estate tax bills. That's another way to ask. If they had brought this within the three-year period, the town would have paid $344,000. That's probably – Again, my position previously was that this should be measured from the entry of judgment. And speaking to Fifth Amendment jurisprudence, the standard for claim accrual is when you know or could or should have known that you have a claim. And we do believe that there is a burden on taxpayers, citizens, property owners who have their property taken to diligently protect their rights as soon as they have a reason to know. And our understanding of this case is that Mr. Davenport had knowledge and notice of the underlying tax foreclosure proceeding. And in all likelihood, the outcome that he would lose his property on the entry of judgment. And so from the town's perspective, anything that happened after judgment entered is immaterial to Mr. Davenport's claim. Because he knew or should have known at the moment that judgment entered that he no longer owned his property and had to defend his rights. Anything further? No, thank you. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.